IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE HOFFMAN,<br><br>              Plaintiff,<br>v.<br>COMPASSUS,[1]<br><br>              Defendant. | CIVIL ACTION<br>NO. 18-0776 |

**OPINION**

**Slomsky, J.**                                                                                                   April 23, 2019

## I. INTRODUCTION

Plaintiff Suzanne Hoffman is a registered nurse that was formerly employed by Defendant Compassus.[2] Compassus is a company that provides hospice care, palliative care, and home health services. Hoffman initiated this lawsuit against Compassus for employment discrimination, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Pennsylvania Human Relations Act ("PHRA"), Pennsylvania common law, and the Pennsylvania Wage Payment and Collection Law ("PWPCL").

Compassus had emailed a copy of its Dispute Resolution Policy to all of its employees. In fact, the Policy was an arbitration agreement that required all employees who did not wish to be bound by its terms to opt out by emailing the company within fourteen days of receiving it. Hoffman did not send a return email stating that she intended to opt out. She also did not sign the

---

[1] "Compassus" should properly be captioned as "FC Compassus LC." (Doc. No. 12 at 5.)

[2] Compassus, https://www.compassus.com/ (last visited: Apr. 15, 2019).

Policy below an explanation that she would be accepting the arbitration agreement by signing it by hand or electronic signature. Because she did not sign it, she believed that the arbitration agreement was invalid and unenforceable.

Before the Court is Defendant Compassus's Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 12) Plaintiff has filed a Response in Opposition (Doc. No. 13), and Defendant filed a Reply (Doc. No. 14). For reasons that follow, the Court will grant Defendant's Motion to Compel Arbitration (Doc. No. 12).

## II. FACTUAL BACKGROUND

### a. Dispute Resolution Policy

Plaintiff Suzanne Hoffman ("Plaintiff" or "Hoffman") was a triage nurse, also known as a registered nurse. (Id. ¶ 13.) In March 2014, Hoffman began working for Compassus's predecessor company, Evercare Hospice. (Id. ¶ 10.) A company named Optum purchased Evercare Hospice, and Compassus later purchased Optum on February 1, 2017. (Id. ¶ 11.) Many Optum employees, including Plaintiff, maintained their seniority when the company changed ownership. (Id. ¶ 12.)

On February 1, 2017, when Compassus became Plaintiff's employer, it sent the Dispute Resolution Policy ("Policy") in electronic form to all employees at their personal company inboxes ("Workday Inbox"). (Doc. No. 12-3 at 40-45.) The Policy was an arbitration agreement, which provided:

> This Dispute Resolution Policy ("Policy") requires both you, our Colleague, and Compassus, to submit any covered claims to arbitration, a private form of dispute resolution where a neutral, private arbitrator will decide claims that may arise between you and Compassus, instead of a judge or jury . . . .
>
> . . .
>
> ALL DISPUTES COVERED BY THIS POLICY SHALL BE DECIDED BY AN ARBITRATOR THROUGH FINAL AND BINDING ARBITRATION AND NOT

BY WAY OF COURT, JURY TRIAL, OR ANY OTHER ADJUDICATORY PROCEEDING.

Covered Claims

Unless a claim or dispute is expressly excluded below, this Policy applies to any and all claims or disputes, past, present or future, that may arise between you and Compassus, including without limitation any dispute arising out of or related to your application for employment, employment and separation, and the Policy continues to apply after the end of our employment relationship. This Policy applies to a covered dispute that Compassus may have against you or that you may have against Compassus or its officers, directors, shareholders, members, owners, employees, managers, and agents (all of whom may enforce this Policy as direct or third-party beneficiaries.)

The claims and disputes subject to arbitration are those that, in absence of this Policy, could be brought under applicable law. The Policy applies, without limitation, to claims based upon or related to discrimination, harassment, retaliation, defamation . . . breach of contract or covenant, fraud, negligence, emotional distress . . . wages or other compensation or monies claimed to be owed, meals and rest periods, termination, tort claims, equitable claims, and all statutory and common law claims unless specifically excluded below. This Policy specifically covers, without limitation, claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans With Disabilities Act, the Age Discrimination in Employment Act the Family Medical Leave Act, the Fair Labor Standards Act . . . and state or local statutes, if any, addressing the same or similar subjects.

(Doc. No. 12-3 at 23.) Further, in a section titled "Right to Opt-Out of the Policy," it instructs:

This policy is not a mandatory condition of employment. If you do not wish to be bound by this Policy, you must send an email with (delivery and read receipt requested) to the following email address: arbitration@compassus.com within fourteen (14) days of agreeing to the terms of this Policy. Please include "Dispute Resolution Policy Opt-Out" in the subject line. In that email, you should provide your first and last name and clearly state that you are opting out of this Policy. If you opt out as provided in Section 8, you will not be subject to any adverse employment action as a consequence of that decision, and neither you nor Compassus will be bound by this Policy. If you do not opt out of this Policy within this fourteen-day period, both you and Compassus will be required to arbitrate all claims and disputes covered by this Policy in accordance with its terms. You have the right to consult with counsel of your choice concerning this Policy.

(Id. at 26.) Directly above the signature line, in a section titled "Mutual Agreement to Policy," it states:

3

> You are accepting and agreeing to the terms of this Policy by either signing this Policy by hand (if this is a paper copy), or through an electronic signature (if you are reviewing this Policy electronically/via computer), which you agree is just as valid as if you had signed by hand. This Policy is a binding contract. By presenting you with this Policy, Compassus likewise agrees to the terms of the Policy, and the Policy becomes effective when you confirm your agreement by signing below.

(Id. at 27.) With respect to attorney's fees, it read:

> You and Compassus will pay your own attorneys, subject to any remedies to which either may later be entitled under applicable law. Unless otherwise prohibited by law, if you initiate arbitration, you are responsible for paying an initial filing fee of $200, or an amount equal to the applicable filing fee had the claim been brought in a court of law, whichever is less. Compassus will pay the Arbitrator's fees and any fee for administering arbitration. The Arbitrator will resolve any disputes regarding costs/fees associated with arbitration.

(Id. at 26.)

Hoffman took no action regarding the Policy. Although Hoffman logged into her Workday Inbox on each of the following dates after the Policy was sent: February 1, 2017, February 24, 2017, February 25, 2017, March 1, 2017, March 3, 2017, April 4, 2017, and April 12, 2017, she did not sign it or send an email to Compassus to opt out. (Id. at 39 ¶ 12.)

### b. Employment Discrimination Claims

Hoffman was typically assigned to work a sixteen-hour nightshift at Compassus's former King of Prussia office.[3] (Id. ¶ 13.) Her job duties included attending and pronouncing patient deaths, family updates and education, medication adjustments, fall assessments, phone calls, and doctor notifications. (Id. ¶ 14.) While employed with Evercare Hospice and Optum, she had no record of disciplinary infractions. (Id. ¶ 19.) After Compassus assumed ownership of the company, Hoffman maintained a satisfactory level of performance. (Id. ¶ 20.) She even was nominated for a national SAGE award, which is an award for excellence in hospice care. SAGE

---

[3] Compassus closed this office in spring of 2017. (Doc. No. 1 ¶ 38.)

AWARDS, Greater Scranton Chamber of Commerce, https://www.scrantonchamber.com/sage-awards/ (last visited: Apr. 12, 2019).

In February 2017, Compassus implemented a new electronic medical records system. (Doc. No. 1 ¶ 25.) The company scheduled its employees to receive an eight-hour training session on the new system during the work day. (Id. ¶ 26.) Hoffman's training session was scheduled for February 21, 2017, between two sixteen-hour shifts. (Id.) Defendant's Human Resources Manager, Pam Tribby, told her that she would be paid for her time at training. (Id.) When she attempted to meet with the trainer as scheduled, the trainer refused to work with her because the trainer believed that her knowledge of computers was behind that of younger employees. (Id. ¶ 28.) Although she sent several follow-up emails regarding her training session, and attempted to attend them, Hoffman was never trained to use the system. (Id. ¶ 32.) Compassus did not compensate Hoffman for the time she attempted to attend the training appointments during hours that she was not scheduled to be at work. (Id. ¶ 30.) Plaintiff has alleged that this conduct was discriminatory because younger employees had the opportunity to attend training during their work hours. (Id. ¶ 31.)

In spring of 2017, after Compassus closed its King of Prussia facility, Plaintiff was moved to the Newtown Square facility and was reassigned to a dayshift. (Id. ¶¶ 38-40.) At the new location, Plaintiff was assigned new supervisors. (Id. ¶¶ 42, 43.) On April 7, 2017, a supervisor asked her to prepare a Certificate of Terminal Illness, which is a document that confirms a patient has a terminal diagnosis and is eligible for hospice care. (Id. ¶ 43.) The supervisor had received this information from a physician, and then orally conveyed it to Plaintiff. Because Hoffman believed it was illegal to write a Certificate of Terminal Illness based on a verbal order, she refused to do it. (Id. ¶ 44.) As a result, her supervisor threatened her with termination.

Further, Plaintiff alleged that she was not paid for extra work that Defendant promised to pay her for. (Id. ¶¶ 46, 47.) Specifically, she alleged that she should have been paid extra for evaluating potential admissions to Defendant's Newtown Square facility in March and April 2017. (Id. ¶¶ 47, 48.) When she raised this concern with Compassus, she received a partial payment and believes she is still owed the remainder. (Id. ¶ 49.)

One day, Plaintiff was disciplined for not writing up the Certificate of Terminal Illness and for a purported disparaging text she sent. (Id. ¶ 52.) Because members of the management team involved in the conversation that led to this discipline had allegedly screamed at her, she experienced chest pains and flare-ups of an existing disability.[4] (Id. ¶¶ 53, 54.)

On April 16, 2017, Plaintiff began FMLA leave. Days later, she had a conversation with Defendant's internal corporate compliance representative, to whom she explained everything that transpired. (Id. ¶ 56.) After the conversation, Compassus still took no action. (Id. ¶ 57.) In June 2017, Defendant removed Plaintiff's access to the employee portal, where she received all correspondence from Human Resources, emails, and information related to her employment. (Id. ¶ 58.) She was barred from viewing paystubs, vacation time, email, and other items. (Id.)

Plaintiff's FMLA leave ended on July 31, 2017. (Id. ¶ 60.) Immediately thereafter, she took discretionary leave until the end of the Fall of 2017 due to her disabilities. (Id.) To remain on discretionary leave, Compassus required her to submit additional medical information. (Id. ¶ 61.) She submitted the necessary paperwork. (Id.) In a letter sent to Hoffman, dated October 3,

---

[4] Plaintiff suffers from cardiac arrythmia (irregular heartbeat) and palpitations, Mitral Valve Prolapse, anxiety disorder, and Post-Traumatic Stress Disorder. (Id. ¶ 15.) She alleged that Compassus should have been aware of these illnesses because when the company purchased Optum, its predecessor, employees had signed waivers allowing Compassus full access to their files. (Id. ¶ 17.)

6

2017, regarding her medical certification and desire to return to work, Compassus's Director of Leaves of Absence and Workers' Compensation wrote ". . . as you know we've offered group training, individualized training, and continued coaching and lessons as means of providing EMR training to you."[5] (Id. ¶ 62.) The letter also provided:

> We currently have the following positions available that encompass a day shift scheduled: RN Case Manager in our Fort Washington location with regular schedule of Monday-Friday 8 a.m. – 5 p.m., however, this position includes an expectation of on 8 hour on-call shift per month on a Saturday or Sunday as necessary.

(Id. ¶ 65.) Plaintiff avers that before receiving this letter from Compassus, she was given verbal confirmation that the Newtown Square position was available to her, but after receiving the letter, she understood that it no longer was available. (Id. ¶ 66.) The Fort Washington position increased her commute by an hour a day and required her to work on weekends. (Id. ¶ 67.) Despite this communication from Compassus, she apparently did not return to work through January 2018.

On January 26, 2018, Compassus sent Plaintiff a letter terminating her employment.[6] (Id. ¶ 68.) Shortly thereafter, she filed the Complaint (Doc. No. 1), alleging the following causes of action: Disability Discrimination, Constructive Discharge, and Retaliation under the ADA (Count I), and the PHRA (Count II); Age Discrimination, Hostile Work Environment, Constructive Discharge, and Retaliation under the ADEA (Count III) and the PHRA (Count IV); Retaliation under the FMLA (Count V); breach of contract under Pennsylvania common law (Count VI), and a violation of Pennsylvania Wage and Collection Law (Count VII).

---

[5] Plaintiff quotes the letter she received on October 3, 2017. However, it is not attached as an exhibit to the Complaint. (Id. ¶ 62.)

[6] Plaintiff states that the letter was dated January 26, 2017, but was "presumably intended to read '2018.'" (Id. ¶ 68.)

### III. STANDARD OF REVIEW

#### a. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") establishes a strong federal policy in favor of resolving disputes through arbitration. Alexander v. Anthony Int'l L.P., 341 F.3d 256, 263 (3d Cir. 2003). The FAA provides in relevant part "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract." 9 U.S.C. § 2. Therefore, if the parties entered into a valid agreement to arbitrate, and the specific dispute falls within the scope of that agreement, the FAA mandates judicial enforcement of that agreement. See 9 U.S.C. §§ 2-4; Circuit City Stores v. Adams, 532 U.S. 105, 111 (2001).

Questions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination unless the parties have "clearly and unmistakably" agreed that the arbitrator should decide the issue of arbitrability. Puleo v. Chase Bank U.S.A., N.A., 605 F.3d 172, 178 (3d Cir. 2010) (quoting AT&T Techs, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986)). Under the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract

language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

    **b. Standard For Evaluating The Motion To Compel Arbitration**

The Third Circuit Court of Appeals has provided guidance on the standard that district courts apply in determining whether, in a specific case, an agreement to arbitrate was reached. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). Some cases "support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted," under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. (citation omitted). The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any "plausible" reading of the pleadings, the plaintiff would be entitled to relief. Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under this standard, a district court should not compel arbitration "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, it determines that the plaintiff is not entitled to relief under any reasonable reading of the complaint." Id. (citing McGovern v. City of Phila., 554 F.3d 114, 115 (3d Cir. 2009)).

In other cases, district courts have decided a motion to compel arbitration under the same standard it applies to a motion for summary judgment. Id. (citing Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). Under this standard a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

9

materials." Fed. R. Civ. P. 56(c)(1)(A). In evaluating the motion under Rule 56, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

When it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. at 776 (citing Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)) see also Sanford v. Bracewell & Guiliani, LLP, 618 Fed App'x 114, 117 (3d Cir. 2015). But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." Guidotti, 716 F.3d at 776. At this point, the summary judgment standard applies.

A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54 (3d Cir. 2001) (internal quotations omitted). This is so because the goal of the FAA was ostensibly to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Varallo v. Elkins Park Hosp., 63 Fed App'x 601, 603 (3d Cir. 2003) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).

## IV. ANALYSIS

### A. Applying The Standard

Here, the Court will consider Defendant's Motion to Compel Arbitration (Doc. No. 12) under the Federal Rule of Civil Procedure 12(b)(6) standard. The Complaint reveals that Hoffman has sued for employment discrimination.[7] (Doc. No. 1.) Although the Complaint does not reference the arbitration agreement in the Policy, Hoffman's allegations clearly fall within the Policy's scope. (Doc. No. 12-3.) As discussed infra, neither the Complaint nor Plaintiff's Opposition to the Motion to Compel Arbitration (Doc. No. 13) has set forth additional facts that invalidate the arbitration agreement. Further, Hoffman also does not dispute that the Policy covers all of the claims she raises in this case. Accordingly, it is not necessary to conduct discovery on the question of arbitrability, and the motion to dismiss standard rather than the motion for summary judgment standard applies here.

### B. The Motion To Compel Will Be Granted

When analyzing whether parties have entered into a valid arbitration agreement, a district court must determine: (1) whether there was an agreement to arbitrate, and if so (2) whether the specific dispute falls within the substantive scope of that agreement[8]. Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54 (3d Cir. 2001).

In the present matter, the only issue before the Court is whether the arbitration agreement was valid and should be enforced. Plaintiff argues that it is invalid because she never signed it, thereby manifesting her intent not to agree to arbitrate her claims against Compassus. (Doc. No.

---

[7] The Complaint does not reference the arbitration agreement. (See Doc. No. 1.)

[8] As noted, Plaintiff does not dispute that her claims fall within the scope of the arbitration agreement.

13.) She further asserts that the Policy should not be enforced because it restricts her statutory right to recover attorney's fees if she prevails. (Id.) Defendant claims that both arguments fail because (1) Hoffman accepted the agreement by continuing her employment after receiving it in her Workday Inbox, and did not reject it by opting out within fourteen days, as required; and (2) the Policy does not abridge any statutory right to attorney's fees. (Doc. Nos. 12, 14.) The Court will address each argument in turn.

### 1. The Arbitration Agreement Is Valid And Enforceable

General contract principles apply to the interpretation and enforcement of arbitration agreements. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 939 (1995). Specifically, courts look to the relevant state law of contracts to determine if a party had entered into a valid and enforceable agreement to arbitrate. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 524 (3d Cir. 2009). Here, Pennsylvania law applies. Under Pennsylvania law, a valid contract requires (1) a mutual manifestation of an intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002). With respect to the first prong, "acceptance is not measured by the parties' subjective intent, but rather by their outward expressions of assent." Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008).

In several recent cases in this District, the Court has addressed the particular issue of whether a defendant-employer's arbitration agreement was enforceable against a plaintiff-employee under similar circumstances. See, e.g., Wetzel v. Baldwin Hardware Corp. No. 98-3257, 1999 WL 54563, at *1 (E.D. Pa. Jan. 29, 1999) (granting a motion to compel arbitration where an employee received and had notice of a mandatory arbitration agreement, even though the employee did not sign it); Hamilton v. Traveler's Property & Cas. Corp., No. 01-11, 2001 WL 503387, at *2 (E.D. Pa. May 11, 2011) (binding an employee to the arbitration provision contained in the

employer's handbook, and noting that the employee's receipt of the handbook constituted an offer of continued employment subject to its terms); Gutman v. Baldwin, No. 02-7971, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002) (enforcing an arbitration agreement signed by plaintiff, and noting that continued employment after receiving notice of the mandatory arbitration policy constituted acceptance of the offer, not the employee's signature).

In the Wetzel case, supra, the Court granted a Motion to Compel Arbitration when a plaintiff continued working for his employer after receiving a copy of the company's arbitration policy and accompanying explanatory memorandum. 1999 WL 54563, at *1. The employer's arbitration policy explicitly stated that acceptance was a condition of employment, and that both the employer and employees were bound by its terms. Id. It also covered all claims either party had concerning the employment or termination. Most notably, plaintiff Wetzel did not sign the agreement.

Applying Pennsylvania law, the court considered many factors in examining whether there had been an offer, acceptance and consideration. Id. It explained that an employee policy or handbook is not considered a contract unless both the employer and employee are bound by it, which they both were. Id. at *3. The court also observed that plaintiff had notice of the arbitration policy when he received it with a memorandum explaining its terms. Id. Given that background, the court held that plaintiff's continued employment after receiving notice of the policy constituted not only his acceptance, but also consideration for the arbitration agreement. Id. at *3-4. Importantly, the court clarified that the fact that Wetzel did not verbally assent, or sign the agreement did not render his consent invalid. Id. at *3. The court specifically reasoned:

> As this court must generously construe the parties' intentions in favor of arbitrability, the explicit terms of the [agreement] and continued employment of Mr. Wetzel are sufficient basis for finding that an enforceable arbitration agreement exists.

Id. at *4 (citation omitted).

Similarly, in <u>Hamilton v. Traveler's Property & Cas. Corp.</u>, <u>supra</u>, the Court enforced an arbitration agreement that was written in defendant's employee handbook. 2001 WL 503387, at *2 (E.D. Pa. May 11, 2011). By receiving the handbook, plaintiff was on notice of the company's requirement to arbitrate all disputes arising out of his employment. As the Court elaborated, "[h]is continued employment for approximately two years after being made aware of the future implementation of the employee arbitration policy is sufficient to constitute both acceptance of the company's offer and consideration for an enforceable arbitration agreement."

As noted, federal law presumptively favors the enforcement of arbitration agreements. Guided by the above court decisions, the instant arbitration agreement in the Policy at issue here is similarly enforceable. Hoffman was put on notice of the Policy when it was sent to her Workday Inbox, which she logged into several times after February 1, 2017, when the policy was first made available for her review. (Doc. No. 12-3 at 30-36.) She did not opt out of the arbitration agreement in the Policy within the fourteen-day period, as she was required to do in order to reject it. Therefore, by continuing her employment with Compassus after the fourteen-day opt-out period, she accepted the Policy terms and provided consideration to form a binding contract.[9]

Hoffman fixates her opposition on the fact that she did not sign the Policy on the signature page. She specifically contends that her lack of signature precludes a finding that she manifested an intent to be bound because the Policy reads "[y]ou are accepting and agreeing to the terms of this Policy by either signing this Policy by hand . . . or through an electronic signature . . . ."

---

[9] There is no dispute that the terms of the arbitration agreement within the Policy are sufficiently definite to be enforced.

This argument is unpersuasive. Her lack of signature is not material and does not render the arbitration agreement invalid. Although the arbitration agreement here differs from those in Wetzel and Hamilton because it was not initially mandatory, it later became mandatory to employees who did not opt out during the fourteen-day period. Specifically, as set forth above, the Policy states in relevant part:

> If you do not opt out of this Policy within this fourteen-day period, both you and Compassus will be required to arbitrate all claims and disputes covered by this Policy in accordance with its terms. You have the right to consult with counsel of your choice concerning this Policy.

(Doc. No. 12-3 at 26.)

The statement above the signature line, which provides that by signing the agreement, a Compassus employee accepts and agrees to its terms, does not mean that a lack of signature shows an intent to reject the agreement, as Hoffman suggests. Viewing the Policy language through a lens favoring arbitration, if an employee signs the agreement, he or she accepts its terms and the agreement immediately takes effect after signing. If the employee does not sign the agreement on the signature page, however, acceptance of its terms can be discerned from other provisions. Here, the Policy expressly provided instructions for opting out and warned employees that if they did not opt out within the fourteen-day period, they would be "required" to arbitrate their claims. (See Doc. No. 12-3 at 22-27.) If Hoffman intended to reject the agreement, the Policy required her to follow the opt-out instructions. Further, she does not contest that she did not follow the opt out procedure.

For all of these reasons, her continued employment at Compassus until January 26, 2018 sufficiently demonstrates the acceptance and consideration required for an enforceable arbitration agreement. Thus, the arbitration agreement between Hoffman and Compassus is valid and enforceable.

## 2. The Policy Does Not Restrict Hoffman's Statutory Right To Attorney's Fees

In her Opposition, Plaintiff argues that the Policy is invalid because it improperly restricts her statutory rights to an award of attorney's fees if she prevails at arbitration. (Doc. No. 13-2 at 6-7.) The pertinent provision of the Policy reads:

> You and Compassus will pay your own attorneys, subject to any remedies to which either may later be entitled under applicable law. Unless otherwise prohibited by law, if you initiate arbitration, you are responsible for paying an initial filing fee of $200, or an amount equal to the applicable filing fee had the claim been brought in a court of law, whichever is less. Compassus will pay the Arbitrator's fees and any fee for administering arbitration. The Arbitrator will resolve any disputes regarding costs/fees associated with arbitration.

(Doc. No. 12-3 at 26.)

The Policy requires Hoffman to pay her attorney fees "subject to any remedies which . . . may later be entitled under applicable law." Therefore, the Policy does not restrict her statutory rights because under the ADEA,[10] ADA,[11] FMLA,[12] PHRA,[13] and PWCL,[14] the statutes under

---

[10] The ADEA incorporates by reference § 16(b) of the Fair Labor Standards Act of 1938, which provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); see 29 U.S.C. § 626(b). Watcher v. Pottsville Area Emergency Med. Serv., 559 F. Supp. 2d 516, 521 (M.D. Pa. 2008).

[11] Prevailing parties in an ADA case may recover "reasonable" attorney's fees at the discretion of the court." See 42 U.S.C. § 12205; see also Collins v. SEPTA, 69 F. Supp. 2d 701, 702-703 (E.D. Pa. 1999).

[12] Under the FMLA, an award of a "reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant" is mandatory if a plaintiff obtains a judgment in her favor. 29 U.S.C. § 2617(a)(3). Churchill v. Star Enters., No. 97-3527, 1998 U.S. Dist. LEXIS 6068, *3-4 (E.D. Pa. Apr. 17, 1998), aff'd, 183 F.3d 184 (3d Cir. 1999).

[13] An award of attorneys' fees and costs under the PHRA is discretionary. See 43 Pa. Stat. Ann. § 962(c.2) ("[t]he court may award attorney fees and costs to the prevailing plaintiff."). Watcher v. Pottsville Area Emergency Med. Serv., 559 F. Supp. 2d 516, 521 (M.D. Pa. 2008).

[14] Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. Ann. § 260.9a(f) expressly authorizes the payment of reasonable attorney's fees and costs for any action brought pursuant to the statute. Barnhart v. Compugraphic Corp., 936 F.2d 131, 133 (3d. Cir. 1991).

which Hoffman has made her claims, a successful plaintiff can be awarded attorney's fees and costs. Accordingly, if Hoffman prevails, the Policy acknowledges that she would be entitled to recover under these statutes.

It is unclear, however, whether other terms of the Policy deprive Hoffman of her right to recover attorney's fees and costs. Another Policy provision states "[t]he arbitrator may award any individually available remedy allowed by law," which could be interpreted to give the arbitrator the authority to grant attorney's fees to the prevailing party. (Id.) In a different section, the Policy states "[t]he Arbitrator will resolve any disputes regarding costs/fees associated with arbitration." (Id. at 26.) These provisions are not totally consistent, and it does remain unclear if Hoffman is entitled to attorney's fees if she prevails at arbitration.

In any event, the Third Circuit has addressed the issue of ambiguity with respect to attorney's fees, and decided that such ambiguity does not give the District Court the authority to render an arbitration agreement unenforceable, or to speculate as to how the ambiguity should be resolved. Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 231 (3d Cir. 2012) (citing PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 406–07 (2003) (ambiguities in arbitration agreements must be interpreted by the arbitrator). Thus, the ambiguity within the Policy regarding attorney's fees must be submitted to arbitration as well.

## V. CONCLUSION

Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. No. 12) will be granted. An appropriate Order follows.